IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES VAN ZEELAND,

Plaintiff,

v.

RAND MCNALLY

Defendant.

No. 20-cv-00548
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

This suit revolves around the alleged failure of a GPS tablet known as the Rand McNally TND Tablet 80 Truck GPS (the Tablet). Plaintiff James Van Zeeland (Van Zeeland), a commercial truck driver, alleges that he purchased a Tablet from defendant Rand McNally (Rand) and soon experienced numerous problems with the Tablet. His attempts to have Rand repair the Tablet were unsuccessful, and when he requested a refund for the Tablet, Rand refused. Van Zeeland filed this individual and putative class action against Rand, bringing a claim for violation of the Magnuson–Moss Warranty Act (the MMWA), related warranty claims, claims for violations of consumer protection statutes, and Illinois common law claims. R. 1, Compl.[1]

Rand's Motion to Dismiss (R. 25, Mot. Dismiss) is before the Court. For the reasons set forth below, the Court grants in part and denies in part the motion.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background

Rand manufactures, markets, and sells the Tablet, and provides buyers with a one-year warranty. Compl. ¶¶ 12–13.[2] Van Zeeland alleges that the Tablet is prone to failure and malfunction based on a defect that causes it "to consistently generate incorrect directions, identify incorrect current locations, not locate streets and/or addresses, freeze, and experience significant slowdowns, among other problems." *Id.* ¶ 14. According to Van Zeeland, Rand knew that the Tablet was defective and there was no fix to eliminate or reduce its failures and malfunctions. *Id.* ¶ 16. Despite this knowledge, Rand marketed and sold the Tablet while concealing and failing to disclose the fact that it was defective and there was no fix. *Id.* ¶ 22. Moreover, Rand misrepresented the reliability of the Tablet when advertising the Tablet on its website, on YouTube, and in a merchandise display at a Petro Truck Stop. *Id.* ¶¶ 24–25, 33.

Van Zeeland purchased a new Tablet from Rand via its website on or about May 14, 2019. Compl. ¶ 33. Even though he operated his Tablet in a manner consistent with its intended use, he experienced persistent problems with the Tablet, including it displaying inaccurate locations, incorrect directions, and continuously spinning. *Id.* ¶ 34. These problems, which occurred most of the time that Van Zeeland used the Tablet, resulted in substantial delays for Van Zeeland and an inability to navigate while driving his truck. *Id.* In July 2019 and again in August 2019, Van

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Van Zeeland. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Zeeland contacted the Rand help center to complain about his issues with the Tablet but was met each time with a prerecorded statement that Rand was aware of the Tablet problems and it was working to resolve the issues. *Id.* ¶ 35. After these two attempts, he continued to periodically call for updates and was met with the same prerecorded message each time. *Id.* In August 2019, he contacted Rand multiple times and was able to speak with Rand representatives, resulting in one representative offering him a fix in the form of a new mount for the Tablet called a "slice." *Id.* ¶ 36.

The slice did not fix Van Zeeland's problems with the Tablet, so he again contacted Rand, and this time, a representative told him to reset the Tablet. Compl. ¶ 37. Van Zeeland reset the Tablet, but it still did not work, so he requested a refund. *Id.* A representative offered to have a manager call Van Zeeland back, but Van Zeeland never received a call. *Id.* On October 25, 2019, Van Zeeland contacted Rand again to request a refund, but was told that the conditions in his truck, not the Tablet, were the source of the issue. *Id.* ¶ 38. Rand refused to provide him a refund. *Id.* Van Zeeland then attempted to use the Tablet in different trucks and in his personal vehicle but experienced the same issues with the Tablet. *Id.* ¶ 39. As a result, Van Zeeland stopped using the Tablet. *Id.* ¶ 40.

Van Zeeland filed suit against Rand. His Complaint asserts the following causes of action: Count I – violations of the MMWA on behalf of himself and the class[3]

---

[3]Van Zeeland alleges three proposed classes: (i) a Nationwide Class, composed of all current and former purchasers of the Tablet; (ii) a Multi-State Consumer Protection Class, composed of all current and former purchasers of the Tablet in Illinois or any other state with similar laws; and (iii) a Wisconsin Class, composed of all current or former purchasers of the Tablet in Wisconsin. Compl. ¶ 51.

(*id.* ¶¶ 60–75); Count II – breach of the express warranty on behalf of himself and the class (*id.* ¶¶ 76–83); Count III – breach of the implied warranty of merchantability on behalf of himself and the class (*id.* ¶¶ 84–95); Count IV – violations of the Illinois Consumer Fraud and Deceptive Practices Act on behalf of himself and the class (*id.* ¶¶ 96–101); Count V – violations of the Illinois Uniform Deceptive Trade Practices Act on behalf of himself and the class (*id.* ¶¶ 102–10); Count VI – violation of various state consumer protection statutes on behalf of himself and the Multi-State Consumer Protection Class (*id.* ¶¶ 111–22); Count VII – fraudulent concealment on behalf of himself and one of the three classes, in the alternative (*id.* ¶¶ 123–28); and Count VIII – unjust enrichment on behalf of himself and the class (*id.* ¶¶ 129–34). Van Zeeland, on behalf of himself and the class, requests, among other things, compensatory and other damages; restitution and disgorgement of Rand's revenues or profits to Van Zeeland and the class members; an order requiring Rand to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign; and reasonable attorneys' fees and expenses. *Id.* at 32–33. Rand now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss.

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.

CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Subject Matter Jurisdiction

Before addressing the merits of the motion, the Court must ensure it has proper subject matter jurisdiction over Van Zeeland's claims. "It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States' and is inflexible and without exception." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (citations omitted). The Complaint relies on jurisdiction under the Class Action Fairness Act of 2005 (the CAFA) pursuant to 28 U.S.C. § 1332(d). Compl. ¶ 5. Yet neither party addresses the jurisdiction of the Court to hear Count I under the MMWA.

5

Pursuant to the MMWA, "[n]o claim shall be cognizable in a suit brought [in an appropriate district court of the United States] if the action is brought as a class action, and the number of plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). Van Zeeland is the only named plaintiff in this case. Accordingly, it would appear that the Court does not have jurisdiction to hear Van Zeeland's MMWA claim. Notwithstanding the foregoing, this District has confirmed that the CAFA "creates an alternative basis for federal jurisdiction over" a MMWA claim, and that a MMWA claim may proceed in a CAFA class action absent one hundred named plaintiffs. *Stella v. LVMH Perfumes and Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837–38 (N.D. Ill. 2008); *see also Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 574 (6th Cir. 2013) (allowing the CAFA to supersede the MMWA's jurisdictional requirement of one hundred named plaintiffs in a class action). Accordingly, the Court confirms that is has jurisdiction over Van Zeeland's MMWA claim.

## II. Warranty Claims

Turning now to the merits, the Court first addresses Van Zeeland's breach of warranty claims (Counts II and III) before his MMWA claim (Count I), as the breach of warranty claims partly inform the Court's decision regarding the MMWA claim.

### A. Count II – Breach of Express Warranty

In Count II, Van Zeeland claims that Rand breached an express warranty created by the Illinois Uniform Commercial Code (810 ILCS 5/2-313) (the UCC) for the Tablet by supplying Tablets in a condition in which they do not meet the warranty obligations undertaken by Rand and by failing to repair and replace the defect or

6

defective parts inherent in the Tablet. Compl. ¶ 79. Even though Rand received timely notice of the breaches, it has refused to honor its warranty by failing to provide a replacement Tablet that conforms to the qualities and characteristics that Rand expressly warranted when it sold the Tablet to Van Zeeland and the class members. *Id.* ¶¶ 81–83.

Pursuant to the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS § 5/2-313(1)(a). "To state a claim for breach of an express warranty under Illinois law, the complaint must allege (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar General Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

Rand does not challenge the existence of an express warranty. Instead, it contends that Van Zeeland does not state a plausible basis for this claim, because he does not adequately allege a breach. R. 26, Memo. Dismiss at 5. Rand asserts that under Illinois law, a plaintiff must allege that the defendant "undertook repairs but failed to fix the problem within a reasonable number of attempts." *Id.* (citing *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. Ct. 2005)). According to Rand, Van Zeeland gave Rand only one opportunity to provide service to the Tablet,

and when Rand's attempted resolution did not succeed, he immediately demanded a refund. *Id.*[4] Further, Rand claims that Van Zeeland does not allege that the express warranty provides him the right to demand a refund, that Rand refused to repair or replace the Tablet, or that Van Zeeland even requested Rand do so after its first attempt to resolve the issues with the Tablet failed. *Id.* at 5–6.

Van Zeeland responds that he has alleged that he provided Rand a reasonable number of attempts to fix the issue. R. 29, Resp. at 5. He additionally argues, under the UCC, that Rand's warranty failed its essential purpose, and accordingly, the exclusive remedies of repair or replacement may be set aside. *Id.* at 5–6. While Van Zeeland asserts that a determination of whether a warranty failed its essential purpose is a factual inquiry premature at the motion to dismiss stage, he then perplexingly, argues for the same determination. *Id.* at 6.

The Court finds that Van Zeeland has adequately pled sufficient facts supporting the plausibility of his claim for breach of express warranty. The Court cannot determine at this stage in the case whether Rand was offered a reasonable number of attempts to repair or fix the Tablet. Even though "Illinois law does require a manufacturer to make successful repairs within a reasonable time or a reasonable number of attempts," the determination of reasonableness is a factual determination. *See Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 238 (Ill. App. Ct. 2004) (finding that a jury instruction related to a breach of express warranty claim was

---

[4]Rand takes a different position in its Reply, in which it claims that Rand made not one, but two attempts to resolve Van Zeeland's alleged issues with the Tablet before he demanded a refund. R. 35, Reply at 1–2. The Court does not engage in a factual inquiry—whether there were one or two attempts—at this juncture.

inaccurate because "it did not inform the jury that the warrantor was required to fix the automobile within a reasonable time or a reasonable number of attempts). Additionally, the Court agrees with Van Zeeland that a determination as to whether a warranty failed its essential purpose is a factual inquiry premature at the motion to dismiss stage. *In re Rust-Oleum Restore Mktg., Sales Pracs. and Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 789 (N.D. Ill. 2016). As a result, the Court denies Rand's motion with respect to Count II.

### B. Count III – Breach of Implied Warranty of Merchantability

In Count III, Van Zeeland alleges that Rand has breached its implied warranty of merchantability for the Tablet by selling the defective Tablet and by failing to repair it. Compl. ¶¶ 88–94. Under Illinois law, "implied warranties arise as a matter of law." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020) (internal citations omitted). Pursuant to the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id.* (quoting 810 ILCS 5/2-314). "Goods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used." *Id.* (quoting 810 ILCS 5/2-314(2)(c)). Yet, whether a disclaimer of such a warranty is conspicuous and therefore effective against a plaintiff, is also a question of law. *New England Factory, LLC v. Snap-On Equip., LLC*, 430 F. Supp. 3d 377, 382 (N.D. Ill. 2019).

Rand argues that the express warranty contains a written, conspicuous disclaimer of implied warranty of merchantability, and as such, Van Zeeland's claim

must fail as a matter of law. Resp. at 6. Van Zeeland retorts that the disclaimer is unconscionable and that a determination of unconscionability "may involve issues of fact which preclude resolution on a motion to dismiss." Resp. at 7–8 (citing *Rust-Oleum*, 155 F. Supp. 3d at 794). In response to this argument, Rand contends that Van Zeeland has failed to plead unconscionability, noting that the Complaint is devoid of any facts supporting a conclusion that the disclaimer is either procedurally or substantively unconscionable. Reply at 4–5. The Court agrees with Rand.

There is no dispute that Rand manufactured the Tablet and sold it to Van Zeeland. Compl. ¶¶ 12–13, 33. The included disclaimer states as follows:

> **Caution: Rand McNally makes no warranty as to the accuracy of completeness of the information in the TNDTM product and disclaims any and all express, implied or statutory warranties, including any implied warranty of merchantability or fitness for a particular purpose. It is the user's responsibility to use this product prudently. This product is intended to be used only as a travel aid and must not be used for any purpose requiring precise measurement of direction, distance, location or topography.**

R. 26-2, Warranty at CM/ECF 3 (emphasis in original). The case of *Great West Cas. Co. v. Volvo Trucks N. Am., Inc.*, 2009 WL 588432 (N.D. Ill. Feb. 13, 2009) provides guidance to determine whether the disclaimer is conspicuous. In that case, the District Court noted that the UCC "permits parties to exclude implied warranties at the time of sale when certain conditions are met." *Id.* at *3. "To that end, the UCC provides that 'to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous.'" *Id.* (quoting 810 ILCS 5/2–316(2)).

"The UCC defines conspicuous terms to include 'language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.'" *Id.* (quoting 810 ILCS 5/1–201(10)(B))). *See also Tatom v. Ameritech Corp.*, 305 F.3d 737, 743 (7th Cir. 2002) ("The disclaimer was by no means hidden: it came at the end of a short booklet, was set forth in the same typeface as the rest of the booklet following the word 'Notice' in bold letters (a heading and typeface that alerted the reader to its significance), and the language of the disclaimer was unambiguous.")

Here, the disclaimer appears set off at the top of a page, is in bold text, and is preceded by the word "Caution." *See* Warranty. Additionally, the language of the disclaimer is clear: it specifically states that it disclaims the implied warranty of merchantability. *Id.*; *see New England Factory, LLC*, 430 F. Supp. 3d at 382. The Court finds, as a matter of law, that the disclaimer is conspicuous and that it expressly disclaims the implied warranty of merchantability.

Turning now to the issue of unconscionability, the Court first notes that there appears to be conflicting case law on whether an unconscionable determination is a question of fact or law. *See Rust-Oleum*, 155 F. Supp. 3d at 794 (noting that "resolution of whether an express warranty is unconscionable may involve issues of fact which preclude resolution on a motion to dismiss"); *Gonzalez v. FMS, Inc.*, 2015 WL 4100292, at *3 (N.D. Ill. July 6, 2015) ("Whether a particular practice is unfair or unconscionable in the eyes of an unsophisticated consumer is often a question of fact,

and thus "district courts must act with great restraint when asked to rule in this context on a motion to dismiss[.]" (citing *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 759–60 (7th Cir. 2006)); *but see Darne,* 2015 WL 9259455, at *7 ("Whether a contract is unconscionable is a question of law to be decided by the court.").

The Court, however, need not resolve the question here, because regardless of whether the unconscionability determination is a question of fact or law, Van Zeeland has not pled enough to sufficiently make a claim for unconscionability, and the Court (or the fact-finder) is unable to make the determination based on the allegations. "Procedural unconscionability refers to both a situation where a term is so difficult for a plaintiff to find or understand that he cannot have been aware he was agreeing to it and also to a plaintiff's lack of bargaining power or lack of meaningful choice." *Darne,* 2015 WL 9259455, at *7 (internal citations omitted). "Substantive unconscionability refers to contract terms which are inordinately one-sided in one party's favor." *Id.* (internal quotations and citations omitted). Van Zeeland has failed to allege *any* facts to plausibly support that Rand used its bargaining power to force Van Zeeland and the other class members to purchase the Tablet with Rand's warranty; that they did not understand the terms of the warranty; that they did not have the ability to bargain for different terms; that Rand's alleged concealment deprived them of a meaningful choice related to the bargaining process or that the warranty is inordinately one-sided in Rand's favor. *See id.* at *8. In fact, Van Zeeland only summarily alleges that the warranty itself is unconscionable in one paragraph in the Complaint, stating that "Defendant's provision of the Warranty to Plaintiff and

12

Class members constitutes an unlawful, unfair and fraudulent business practice and the Warranty is unconscionable." Compl. ¶ 32. This is no more than a legal conclusion and insufficient to state a claim for either procedural or substantive unconscionability.

As such, the Court grants Rand's motion with respect to Count III.

### C. Count I – Violations of the MMWA

Keeping the breach of warranty findings in mind, the Court now turns back to Van Zeeland's MMWA claim. In Count I, Van Zeeland asserts that Rand violated the MMWA, 15 U.S.C. §§ 2301–2312, based on the fact that Rand breached its written warranty by supplying the Tablet in a condition that does not meet the warranty obligations undertaken by Rand, by failing to repair or replace the Tablet, and by failing to refund Van Zeeland and the class to replace the Tablet. Compl. ¶¶ 60–68. Because the warranty fails in its essential purpose, Van Zeeland claims that his and the class members' remedies should not be limited to remedies in the written warranty but that they should instead be awarded compensatory damages and injunctive relief. *Id.* ¶ 69. Further, he alleges that they are entitled to revoke their acceptance of the Tablet and obtain damages, equitable relief, and attorneys' fees and costs. *Id.* ¶ 75.

The MMWA "allows a consumer to bring a suit where he claims to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act] or under a written warranty, implied warranty, or service contract." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). Section

2304 of the MMWA imposes minimum federal warranty standards for full warranties, but limited warranties are not subject to Section 2304 and its substantive remedies. *Id.* Regardless, though, the MMWA also allows "consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Id.* For this type of a MMWA claim, then, a claim under the MMWA "depends on the existence of a viable underlying state law warranty claim." *Schiesser v. Ford Motor Co.*, 2017 WL 1283499, at *4 (N.D. Ill. Apr. 6, 2017).

Rand argues that Van Zeeland has not alleged that Rand violated any of the MMWA's specific requirements for express warranties, but instead that his MMWA claim hinges on the state law express warranty claim. Resp. at 7. Rand further argues that because the express warranty claim (Count II) must fail, it cannot support Van Zeeland's MMWA claim. *Id.* To the contrary, because the Court has determined that Van Zeeland's state law express warranty claim *is* plausible at the pleading stage (*see supra* II.A), based on Rand's logic, it then follows that Van Zeeland's MWWA claim is also plausible at this stage. Accordingly, the Court denies Rand's motion with respect to Count I.

### III.    State Statutory Claims

### A.  Count IV – Violations of Illinois Consumer Fraud and Deceptive Practices Act

Turning to the state statutory claims, in Count IV, Van Zeeland alleges a violation of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/2 based on the allegation that Rand was aware of the Tablet defect when it marketed and sold it to Van Zeeland and the class members and failed to disclose the

14

defect to them. Compl. ¶ 98. Van Zeeland further alleges that Rand knowingly withheld information regarding the Tablet defect to continue selling it, and that if Van Zeeland and the class members had been aware of the Tablet defect, they would not have bought it. *Id.* ¶¶ 99–100.

Pursuant to the ICFA, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. To allege a claim under the IFCA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)).

Rand challenges Van Zeeland's ICFA claim on two bases: (i) that Van Zeeland lacks standing to bring a claim under the ICFA, because he is a Wisconsin resident and because he does not and cannot allege that the transaction at issue occurred primarily and substantially in Illinois (Resp. at 8–9); and (ii) that Van Zeeland fails to adequately plead his ICFA claim (*id.* at 9–11).

The Court must address the "standing" issue first. Both parties reference the Illinois Supreme Court case of *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005), which announced the reach of the ICFA to non-Illinois residents. Memo. Dismiss at 8; Resp. at 9–10. In *Avery*, the Illinois Supreme Court held that the ICFA does not apply to "fraudulent transactions which take place outside Illinois." 835 N.E.2d at 853. Yet, it also held that "a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 853–54. The court recognized that there is no single formula or bright-line test to make such a determination but that each case must be decided on its own facts. *Id.* at 854.

The Seventh Circuit has noted that "standing" is not the appropriate characterization of Rand's first challenge. *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing* . . . .") (emphasis in original). It has also recognized that the standard in *Avery* is a "fuzzy standard." *Id.* In *Avery*, the court considered the following factors to determine whether a transaction occurred primarily and substantially in Illinois: "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions; (7) where the deceptive statements were made; (8) where payments

16

for services where sent; and (9) where complaints were to be directed." *The Clearing Corp. v. Fin. and Energy Exch. Ltd.*, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010) (citing *Avery*, 835 N.E.2d at 854–55).

Van Zeeland contends that because the factors weigh in favor of a determination that the transaction occurred primarily and substantially in Illinois, the Court should apply the ICFA to both his and the class members' claims. Resp. at 10–11.[5] Van Zeeland alleges that he is a resident of Wisconsin (first factor; *see* Compl. ¶ 9), and that Rand's principal place of business is in Illinois (second factor; *see id.* ¶ 10). The location of the Tablet was presumably Wisconsin (third factor), but Van Zeeland does not allege in which states he drove his truck and other vehicles while using the Tablet (fourth factor). Where "the contracts" were issued and the contract's choice of law provisions (the fifth and sixth factors) have no bearing here. And based on the factual allegations set forth in the Complaint, the Court cannot make a final determination on where payments for services were sent (eighth factor) and where complaints were being directed (ninth factor). Even though Van Zeeland contends that factors four and nine weigh in favor of Illinois (Resp. at 10), the Complaint is devoid of any allegations indicating where the Rand representatives that Van

---

[5]The Court notes that Van Zeeland's argument conflates Rand's conduct directed to him only and Rand's conduct directed towards other class members. As the District Court has previously stated, "the impropriety of considering at this stage whether the claims of unnamed potential plaintiffs can proceed under the ICFA follows logically from the principle that 'until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs.'" *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565, at *3 (N.D. Ill. Sept. 6, 2017) (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002)). As such, the Court need only consider whether Van Zeeland, as the sole named plaintiff, can bring an action under the IFCA. *Id.*

Zeeland spoke with were located and where he was directing his complaints when he spoke to them. If they were in fact located in Illinois, and Van Zeeland spoke to them while in Wisconsin, then Van Zeeland dealt with Rand in Illinois, and Rand dealt with Van Zeeland in Wisconsin. *See Morrison*, 649 F.3d at 538. Further, the Complaint does not indicate where Rand made its deceptive statements, but presumably Van Zeeland noticed Rand's deceptive statements in Wisconsin or while he was driving in Wisconsin. Finally, Van Zeeland purchased a new Tablet from Rand via its website. Compl. ¶ 33. This kind of electronic transaction occurred through a network "that is no more 'in' Illinois than it is in Thailand." *Morrison*, 649 F.3d at 538.

As the Seventh Circuit noted in *Morrison*, a district court does not take evidence or make findings of fact, and complaints only need to narrate a plausible claim for relief. *Id.* Yet, here, the Court finds that in viewing the allegations in the light most favorable to Van Zeeland, Van Zeeland has not done that. The one factor showing a connection to Illinois, that Rand's principal place of business is in Illinois, is insufficient. *Avery*, 835 N.E.2d at 855. Van Zeeland must clarify his allegations regarding the applicability of the ICFA and whether his transaction occurred primarily and substantially in Illinois. The Court accordingly grants Rand's motion with respect to Count IV. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (affirming dismissal of an ICFA claim because the plaintiff resided in

Florida, received promotional insurance materials there, entered into and renewed his insurance there, submitted claims there, and was allegedly deceived there).[6]

## B. Count V – Violations of Illinois Uniform Deceptive Trade Practices Act

In Count V, Van Zeeland alleges a violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA), 815 ILCS 510/2, based on the allegations that Rand has engaged in "deception, fraud, unfair practices, and concealment by the conduct, statements, and omissions," and knowingly and intentionally concealed from consumers that the Tablet was defective. Compl. ¶ 106. He further alleges that he and the class members were injured as a result, including but not limited to their purchase of a product they otherwise would not have purchased. *Id.* ¶ 107.

Pursuant to the UDTPA, "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person," among other things, "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have." 815 ILCS 510/2. The only relief available to a plaintiff is injunctive relief, and only if the court finds that the defendant has "willfully engaged in a deceptive trade practice," then also costs, attorneys' fees, or both. 815 ILCS 510/3.

Rand argues that Van Zeeland seeks only damages under this count, and, therefore the Court should dismiss it. Memo. Dismiss at 12–13. As Van Zeeland

---

[6]Because the Court dismisses Count IV on Rand's choice of law argument, the Court need not address Rand's failure to state a claim argument. Memo. Dismiss at 9–11.

correctly points out, he *does* seek injunctive relief in his request for relief. Resp. at 14. On the last page of the Complaint, Van Zeeland requests "[a]n Order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign." Compl. ¶ 33. Accordingly, the Court denies Rand's motion with respect to Count V.

## C. Count VI – Violations of State Consumer Protection Statutes

Under Count VI, which Van Zeeland brings on behalf of himself and the Multi-State Consumer Protection Class, Van Zeeland claims that Rand's conduct "violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class." Compl. ¶ 114. As a result, he alleges that he and the class members "are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law." *Id.* ¶ 122.

Rand first challenges that Van Zeeland lacks standing to pursue claims arising under other states' laws, except Wisconsin, because he does not live in any other state and because he did not view advertising about or purchase the Tablet in any other state except Wisconsin. Resp. at 11. Rand also argues that because Van Zeeland cannot bring an ICFA claim, the Court should dismiss this claim as well. *Id.* at 12.

Rand's standing challenge fails here too. In *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015), the District Court noted that a challenge

of this claim based on standing "is more accurately characterized as an attack not on [the plaintiff's] Article III standing *per se*—for he has adequately alleged that he suffered an injury (loss of enjoyment of the use of his computer) that is fairly traceable to [the defendants'] software—but rather on his ability under Rule 23 to represent the multi-state class." It confirmed that this question is "best deferred to the class certification stage." *Id.*

However, Rand's second argument—that because Van Zeeland cannot bring an ICFA claim, a claim asserting violations of other state's consumer protection statutes should also fail—has merit. In *Halperin*, the court went on to find that because the plaintiff had not adequately pled a consumer fraud claim under Illinois law, he could not represent either an Illinois class under the ICFA or a multi-state class under other states' consumer fraud laws. 123 F. Supp. 3d at 1009. Because the court dismissed his ICFA claim, it also dismissed his claims under the other states' consumer protection laws. *Id.*

Like in *Halperin*, the Court's decision to dismiss Van Zeeland's ICFA claim, merits a dismissal of Count VI as well. The Court accordingly grants Rand's motion with respect to Count VI.

## IV.  State Common Law Claims

### D. Count VII – Fraudulent Concealment

In Count VII, Van Zeeland alleges a claim of fraudulent concealment by Rand based on its alleged misrepresentations, nondisclosure, and/or concealment of

material facts that Rand knew or should have known were false and material, and intended to mislead Van Zeeland and class members. Compl. ¶ 125.

Under Illinois law, to plead fraudulent concealment, a plaintiff must "allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Squires-Cannon v. Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)). "The duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'" *Id.* (quoting same). Moreover, Federal Rule of Civil Procedure 9(b) imposes a higher pleading standard on plaintiffs, who must allege fraud with "particularity." *Id.* (quoting FED. R. CIV. P. 9(b)).

Rand argues that because Van Zeeland repeats the same and deficient allegations as those in his ICFA count here, Count VII should also be dismissed. Memo. Dismiss at 13. It also argues that Van Zeeland has failed to allege that Rand had a duty to disclose a material fact to Van Zeeland. *Id.* at 13–14. Van Zeeland suggests that while a duty to disclose may arise where the parties have a fiduciary or confidential relationship, it can also be inferred where one party has exclusive knowledge of a product and its defects. Resp. at 14 (citing *Lilly v. Ford Motor Co.*, 2002 WL 84603, at *8–9 (N.D. Ill. Jan. 22, 2002). Because Rand had exclusive knowledge of the latent defect in the Tablet and this information would have been material in Van Zeeland's and the class members' decision to purchase the Tablet,

22

Van Zeeland posits that Rand induced the reliance of him and the class members and invoked a duty to disclose. *Id.* at 14–15.

The Seventh Circuit's analysis in *Wigod* is instructive on this point. 673 F.3d 547. In *Wigod*, the Seventh Circuit affirmed the dismissal of a fraudulent concealment claim based, in part, on the fact that there was no fiduciary relationship between the plaintiff and the defendant and no special trust relationship either. *Id.* at 571. The court first noted that the Illinois Appellate Court recently found that "the standard for identifying a special trust relationship is 'extremely similar to that of a fiduciary relationship.'" *Id.* (quoting *Benson v. Stafford*, 941 N.E.2d 386, 403 (Ill. App. Ct. 2010)). It went on to note that Illinois state and federal courts "have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Id.* (internal citations omitted). The court then noted that the special trust relationship threshold is high and that the defendant "must be clearly dominant, either because of superior knowledge of the matter derived from . . . overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side." *Id.* at 572 (citing and quoting *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13 (Ill. App. Ct. 2001) and *Mitchell v. Norman James Constr. Co.*, 684 N.E.2d 872, 879 (1997)). It also referenced the factors to consider in determining the existence of a special trust relationship: "the degree of kinship of the parties; any disparity in age, health, and mental condition; differences in education and business experience between the parties; and the extent to which the allegedly servient party entrusted the handling of her business affairs to the dominant party, and whether

23

the dominant party accepted such entrustment." *Id.* (quoting *Mitchell*, 684 N.E.2d at 879). "In short, the defendant accused of fraudulent concealment must exercise 'overwhelming influence' over the plaintiff." *Id.* (quoting *Miller*, 762 N.E.2d at 14). Finally, the court held that "asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship." *Id.* at 573.

Van Zeeland has not alleged that Rand's and his relationship was a fiduciary one. Additionally, the problem with Van Zeeland's argument supporting a special trust relationship is that Van Zeeland has not alleged any facts stating or suggesting that Rand had a clearly dominant relationship over Van Zeeland or the class members whereby it exercised overwhelming influence over them. Van Zeeland's Response lacks any substantive argument addressing the factors to establish a special trust relationship. Moreover, Rand did not have exclusive knowledge of the Tablet's defects. As Rand references, Van Zeeland's allegations are premised on the fact that the problems with the Tablet were widespread and widely-known. Reply at 13 n.6 (citing Compl. ¶ 16); *see also* Compl. ¶¶ 18–20.

Accordingly, based on Van Zeeland's failure to adequately establish a special trust relationship and corresponding duty to disclose, the Court grants Rand's motion with respect to Count VII.

### E. Count VIII – Unjust Enrichment

Finally, in Count VIII, Van Zeeland brings a claim for unjust enrichment based on the fact that Rand has accepted a benefit in the form of money for the Tablets and that it would be inequitable for it to retain related profits, benefits, compensation,

consideration, and other monies. Compl. ¶¶ 132–33. Van Zeeland seeks restitution from Rand and a disgorgement order. *Id.* ¶ 134.

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Banco Panamericano, Inc. v. City of Peoria, Ill.*, 880 F.3d 329, 333 (7th Cir. 2018) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

Rand argues that because an express warranty governs the relationship between it and Van Zeeland and because Van Zeeland has alleged adequate remedies at law (based on the fact that he has re-alleged and incorporated by reference all the prior allegations in the Complaint) he cannot plead unjust enrichment. Memo. Dismiss at 14–15. Additionally, he argues that Van Zeeland does not allege why a refund of the purchase price of the Tablet would be inadequate. *Id.*

The Court agrees with Rand. It is axiomatic that an express warranty is contractual in nature. *Publ'ns Int'l Ltd. v. Mindtree Ltd.*, 2014 WL 3687316, at *3 (N.D. Ill. July 24, 2014) (citing *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 2007)). Van Zeeland's Count I is premised on the existence of an express warranty. Yet, Van Zeeland ignores relevant case law regarding unjust enrichment. "[U]njust enrichment is a quasi-contractual theory of recovery that ordinarily is not available where an express contract exists . . . [W]hen two parties' relationship is governed by contract, they may not bring a claim of unjust

enrichment unless the claim falls outside the contract . . . . In determining whether a claim falls outside a contract, the court considers the subject matter of the contract rather than the contract's specific terms or provisions . . . . A party whose contractual expectations were not realized may not make an end run around contract law by pursuing an unjust enrichment theory." *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010) (internal citations omitted). Here, Van Zeeland's suit is based on the fact that an express warranty covers the subject matter of his claims against Rand, namely the Tablet's deficiency. As in *Duffy*, his unjust enrichment claim expressly incorporates his contractual allegations (*see* Compl. ¶ 129), and his "contractual allegations are simply incompatible with [his] unjust enrichment claim." *Duffy*, 722 F. Supp. 2d at 993.

Van Zeeland attempts to overcome this challenge with the case of *Alea v. Wilson Sporting Goods Co.*, 2017 WL 5152344, at *5 (N.D. Ill. Nov. 7, 2017), which stands for the proposition that a motion to dismiss a claim for unjust enrichment is premature until an express contract is proven. Resp. at 15. Yet, as Rand correctly points out (Reply at 15), Van Zeeland ignores the fact that the court in *Alea* was evaluating the plaintiff's claims under Florida law, not Illinois law. 2017 WL 5152344, at *4 (holding that, as a result of its choice-of-law analysis, "the governing actors strongly favor applying Florida law to [the plaintiff's] individual claims"). As such, *Alea* is distinguishable here, and Van Zeeland cannot overcome Rand's express

contract argument. The Court accordingly grants Rand's motion with respect to Count VIII.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Rand's Motion to Dismiss [25], as follows:

- denies the motion with respect to Count I;

- denies the motion with respect to Count II;

- grants the motion with respect to Count III;

- grants the motion with respect to Count IV;

- denies the motion with respect to Count V;

- grants the motion with respect to Count VI;

- grants the motion with respect to Count VII; and

- grants the motion with respect to Count VIII.

The Court's dismissal of the above-mentioned counts is without prejudice, and the Court grants leave to Van Zeeland to file an amended complaint on or before 04/21/2021. If Van Zeeland files an amended complaint on or before 04/21/2021, the Court directs Rand to answer or otherwise plead in response on or before 05/12/2021.

Dated: March 31, 2021

United States District Judge
Franklin U. Valderrama